```
 1            UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF OHIO
 2                 WESTERN DIVISION

 3                    -  -  -

 4  UNITED STATES OF AMERICA,   .  CASE NO. 1:13-cr-104
                                .
 5           Plaintiff,         .
                                .  Arraignment and Plea Hearing
 6        - v -                 .
                                .  Tuesday, December 3, 2013
 7  JTEKT CORPORATION,          .  10:00 a.m.
                                .
 8           Defendant.         .  Cincinnati, Ohio
    . . . . . . . . . . . . .
 9

10             TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE HERMAN J. WEBER, SENIOR JUDGE
11

12  For the Plaintiff:

13     DIANE C. LOTKO-BAKER, ESQ.
       CARLA M. STERN, ESQ.
14     United States Department of Justice
       Antitrust Division
15     209 S. LaSalle Street
       Suite 600
16     Chicago, Illinois  60604

17

    For the Defendant:
18
       HEATHER LAMBERG KAFELE, ESQ.      BEAU W. BUFFIER, ESQ.
19     Sherman & Sterling LLP           SATOKO KATO, ESQ.
       801 Pennsylvania Avenue, NW      Sherman & Sterling
20     Washington, D.C.  20004          599 Lexington Avenue
                                        New York, New York  10022
21
       DREW H. CAMPBELL, ESQ.
22     Bricker & Eckler LLP
       100 South Third Street
23     Columbus, Ohio  43215

24
    Also Present:    Hiroyuki Kaijima, Defendant's Representative
25                   Special Agent C.J. Freihofer (FBI)
```

1    Law Clerk:          Amy Peters Thomas, Esq.

2    Courtroom Deputy:   Betsi Brockmeier

3
     Court Reporter:     Maryann T. Maffia, RDR
4                        239 Potter Stewart U.S. Courthouse
                         100 East Fifth Street
5                        Cincinnati, Ohio  45202

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1

2      THE COURT:  Proceed, Miss Brockmeier.

3      COURTROOM DEPUTY:  This morning is Criminal Action

4  1-13-104:  *United States of American versus JTEKT Corporation*.

5      Appearing on behalf of the United States are Diane C.

6  Lotko-Baker and Carla M. Stern.

7      Appearing on behalf of the defendant are Beau W. Buffier,

8  Drew Campbell, Heather Lamberg Kafele and Satoko Kato.

9      The defendant representative, Hiroyuki Kaijima, is present

10  in the courtroom.

11      THE COURT:  What does the United States propose in

12  this matter?

13      MS. LOTKO-BAKER:  Your Honor, the United States has

14  the proposed Information to file against the proposed

15  defendant, JTEKT Corporation.

16      It's our understanding that JTEKT is going to execute a

17  Waiver of Indictment, and the United States is ready to

18  proceed.

19      THE COURT:  Thank you.

20      I will conduct the proceedings in the courtroom except for

21  the discussion of Attachment A, which will be done in

22  chambers.

23      Sir, are you the representative of the corporation?

24      MR. KAIJIMA:  Yes, I am.

25      THE COURT:  Would you tell me your name, please.

1            MR. KAIJIMA:  My name is Hiroyuki Kaijima.

2            THE COURT:  And, sir, are you represented by a lawyer

3    or lawyers in this case?

4            MR. KAIJIMA:  Yes, people who are sitting next to me.

5            THE COURT:  And, Miss Baker, have you --

6         Thank you.  Please be seated.  This conversation will take

7    a considerable length of time.  It's very important that you

8    and I understand the proceedings.  If you have any question,

9    don't hesitate to ask a question.  If you're concerned about

10   asking a question directly of me, please ask the lawyer, and

11   the lawyer will ask the question on your behalf.  But you and

12   I are the important people here today.

13        Miss Baker, have you advised your client that he has the

14   right to have this matter considered by the grand jury?

15           MS. KAFELE:  Yes, Your Honor.  Heather Kafele.

16           THE COURT:  Oh.

17           MS. KAFELE:  That's okay.  Miss Baker is with the

18   government.  Yes, we have advised our client.

19           THE COURT:  Oh, I see.  Well, let's see now.  I'll

20   get that straight.  You are --

21           MS. KAFELE:  Heather Lamberg Kafele, but I just go by

22   Kafele.

23           THE COURT:  All right.  Okay.  Thank you.  Welcome to

24   Cincinnati, the home of Honda.

25        (Laughter.)

1          Thank you very much.

2          Sir, it's my duty to tell you that you cannot be required

3     -- or your corporation cannot be required to stand trial in

4     this court unless a grand jury agrees that there is probable

5     cause that crime has been committed.  I understand there has

6     been an extensive Plea Agreement entered into in this case and

7     so on, but I still have to go through this formal part of the

8     proceedings.

9          If you wish to have grand jury consideration of your case,

10    all you have to do is say, "I want it."  You can ask for it

11    right now today, and we will accept that, that position of

12    your corporation.

13         Please understand that by proceeding, by giving up this

14    right, you do not give up any of the other constitutional

15    rights the corporation has.  You have -- the corporation has a

16    right to plead not guilty, be tried by a jury, be represented

17    by lawyers throughout the course of the proceedings, face the

18    prosecution witnesses, require witnesses to testify on behalf

19    of the corporation, compulsory process, and the United States

20    must prove the guilt beyond a reasonable doubt.

21         Do you understand that you still retain all those rights,

22    and all you're doing at this point in the proceeding is giving

23    up the grand jury consideration of the case and proceeding in

24    this court immediately to trial?

25              MR. KAIJIMA:  Yes, I understand all the description

1    you made.  Yes, this procedure based on -- yes, I completely

2    understand all the options and made the decision.

3            THE COURT:  Thank you, sir.

4       If it is your desire to proceed in this matter and if it's

5    your advice to your client, please have him sign the written

6    waiver.

7       (The defendant representative signed the document.)

8            MS. KAFELE:  He has signed the waiver, Your Honor.

9            THE COURT:  Let the record show the trial judge has

10   observed the signing of the waiver here in court.

11      Sir, are you authorized to sign this waiver on behalf of

12   the corporation?

13           MR. KAIJIMA:  Yes, sir.  I have both Resolution in

14   September authorizing me.

15           THE COURT:  Is it still in effect today?

16           MR. KAIJIMA:  Yes.

17           THE COURT:  I think it was signed September 13, if I

18   recall.

19           MR. KAIJIMA:  Yes.  Since, been no change of the

20   status.

21           THE COURT:  Thank you.  Is this your signature on

22   behalf of the corporation on this document --

23           MR. KAIJIMA:  Yes, Your Honor.

24           THE COURT:  -- that I hold in my hand?

25           MR. KAIJIMA:  Yes, sir.

1    THE COURT:  The Court will accept the Waiver of the

2    Indictment and will order the Information filed.

3    Now, at this time I'm going to ask the United States to

4    present the Information for the record.

5    Proceed.

6    MS. STERN:  Thank you, Your Honor.

7    Count One, Conspiracy to Restrain Trade (15 U.S.C. Section

8    1.)

9    The United States, acting through its attorneys, charges:

10   The Defendant and Co-Conspirators.

11   JTEKT Corporation, Defendant, is a corporation organized

12   and existing under the laws of Japan with its registered

13   headquarters in Osaka, Japan.

14   During the period covered by this Count, Defendant, and

15   its predecessors, were engaged in the manufacture and sale of

16   bearings to Toyota Motor Corporation, certain of its

17   subsidiaries, and other Japanese automobile manufacturers and

18   Japanese automobile component manufacturers ("Japanese

19   automobile and component manufacturers") for installation in

20   vehicles manufactured and sold in the United States and

21   elsewhere.

22   Various corporations and individuals, not made defendants

23   in this Count, participated as co-conspirators in the offense

24   charged in this Count and performed acts and made statements

25   in furtherance thereof.

Whenever in this Count reference is made to an act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

### Background of the Offense.

During the period covered by this Count, Defendant and its co-conspirators manufactured and sold bearings to Japanese automobile and component manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere.

During the period covered by this Count, defendant and its co-conspirators manufactured and sold bearings:

(a) in the United States and elsewhere for installation in vehicles manufactured and sold in the United States;

(b) in Japan and elsewhere for export to the United States and installation in vehicles manufactured and sold in the United States; and

(c) in Japan and elsewhere for installation in vehicles manufactured in Japan and elsewhere for export to and sale in the United States.

Bearings are widely used in industry in numerous applications for many products. Bearings reduce friction and

help things to roll smoothly past on another.  They bear the load.

When purchasing bearings, Japanese automobile and component manufacturers typically issue Requests for Quotations, RFQs, to automotive parts suppliers on a model-by-model basis for model specific parts.  Automotive parts suppliers submit quotations, or bids, to the Japanese automobile and component manufacturers in response to RFQs, and the Japanese automobile and component manufacturers award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production.

Japanese automobile and component manufacturers procure parts for U.S.-manufactured vehicles in the United States and elsewhere.

From at least as early as 2000 and continuing until as late as July 2011, the exact dates being unknown to the United States, Defendant and its co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate markets, rig bids for, and to fix, stabilize and maintain the prices of bearings sold to Japanese automobile and component manufacturers in the United States and elsewhere.  The combination and conspiracy engaged in by the

Defendant and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. Section 1.

The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendant and its co-conspirators, the substantial terms of which were to allocate markets, rig bids for, and to fix, stabilize and maintain prices of bearings sold to Japanese automobile and component manufacturers in the United States and elsewhere.

For the purposes of forming and carrying out the charged combination and conspiracy, Defendant and its co-conspirators did those things that they combined and conspired to do, including, among other things:

(a)  participating in meetings, conversations and communications in the United States and elsewhere to discuss the bids and price quotations to be submitted to Japanese automobile and component manufacturers in the United States and elsewhere;

(b)  agreeing, during those meetings, conversations and communications on bids and price quotations to be submitted to Japanese automobile and component manufacturers in the United States and elsewhere;

(c)  agreeing, during those meetings, conversations and

communications to allocate the supply of bearings sold to Japanese automobile and component manufacturers in the United States and elsewhere;

(d)  agreeing, during those meetings, conversations and communications to coordinate price adjustments requested by Japanese automobile and component manufacturers in the United States and elsewhere;

(e)  submitting bids, price quotations and price adjustments to Japanese automobile and component manufacturers in the United States and elsewhere;

(f)  selling bearings to Japanese automobile and component manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)  accepting payment for bearings sold to Japanese automobile and component manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(h)  engaging in meetings, conversations and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon market allocation, bid rigging and price-fixing scheme; and

(i)  employing measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations.

During the period covered by this Count, Defendant and

its coconspirators sold to Japanese automobile and component manufacturers located in various states in the United States substantial quantities of bearings shipped from outside the United States and from other states in a continuous and uninterrupted flow of interstate and foreign commerce and trade.

In addition, substantial quantities of equipment and supplies necessary to the manufacture and sale of bearings sold by the Defendant and its co-conspirators, as well as substantial payments for bearings sold by Defendant and its co-conspirators, traveled in interstate and foreign commerce.

The business activities of the Defendant and its co-conspirators in connection with the manufacture and sale of bearings that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

The combination and conspiracy charged in this Count was carried out within the United States, at least in part, within the five years preceding the filing of this Information, all in violation of Title 15, United States Code Section 1.

Count Two, Conspiracy to Restrain Trade, 15 U.S.C. Section 1.

The United States, acting through its attorneys, charges:

JTEKT Corporation, Defendant, is a corporation organized and existing under the laws of Japan with its registered

headquarters in Osaka, Japan.  During the period covered by this Count, Defendant, and its predecessors, were engaged in the manufacture and sale of electric-powered steering assemblies to Nissan Motor Company Limited and certain of its subsidiaries ("Nissan") for installation in vehicles manufactured and sold in the United States and elsewhere.

Various corporations and individuals, not made defendants in this Count, participated as co-conspirators in the offense charged in this Count and performed acts and made statements in furtherance thereof.

Whenever in this Count reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

During the period covered by this Count, Defendant and its co-conspirators manufactured and sold electric-powered steering assemblies to Nissan for installation in vehicles manufactured and sold in the United States and elsewhere.

During the period covered by this Count, Defendant and its co-conspirators manufactured and sold electric-powered steering assemblies:

(a) in the United States and elsewhere for installation in

vehicles manufactured and sold in the United States;

(b) in Japan and elsewhere for export to the United States and installation in vehicles manufactured and sold in the United States; and

(c) in Japan and elsewhere for installation in vehicles manufactured in Japan and elsewhere for export to and sale in the United States.

Electric-powered steering assemblies provide electronic power to assist the driver to more easily steer the automobile.  Electric-powered steering assemblies link the steering wheel to the tires, and include the column, intermediate shaft, and electronic control unit, among other parts, but do not include the steering wheel or the tires.

When purchasing electric-powered steering assemblies, automobile manufacturers typically issue Requests for Quotations ("RFQs") to automobile parts appliers on a model-by-model basis for model specific parts.  Automotive parts suppliers submit quotations, or bids, to the automobile manufacturers in response to the RFQs, and the automobile manufacturers award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years.

Typically, the bidding process for a particular model begins more than three years prior to the start of production. Automobile manufacturers procure parts for U.S.-manufactured

vehicles in the United States and elsewhere.

From at least as early as 2005 and continuing until as late as October 2011, the exact dates being unknown to the United States, Defendant and its co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate markets, rig bids for, and to fix, stabilize, and maintain the prices of electric-powered steering assemblies sold to Nissan in the United States and elsewhere.

The combination and conspiracy engaged in by the Defendant and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. Section 1.

The charged combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the Defendant and its co-conspirators, the substantial terms of which were to allocate markets, rig bids for, and to fix, stabilize and maintain the prices of electric-powered steering assemblies sold to Nissan in the United States and elsewhere.

For the purposes of forming and carrying out the charged combination and conspiracy, the Defendant and its co-conspirators did those things that they combined and conspired to do, including, among other things:

participating in meetings, conversations, and

communications to discuss the bids and price quotations to be

submitted to Nissan;

agreeing, during those meetings, conversations and

communications on bids and price quotations to be submitted to

Nissan;

agreeing, during those meetings, conversations and

communications to allocate the supply of electric-powered

steering assemblies sold to Nissan in the United States and

elsewhere;

submitting bids and price quotations to Nissan;

selling electric-powered steering assemblies to Nissan in

the United States and elsewhere at collusive and

noncompetitive prices;

accepting payment for electric-powered steering assemblies

sold to Nissan in the United States and elsewhere at collusive

and competitive prices; and

employing measures to keep their conduct secret,

including, but not limited to, using code names and meeting in

remote locations.

During the period covered by this Count, the Defendant

co-conspirators sold to Nissan located in the United States

substantial quantities of electric-powered steering assemblies

shipped from other states in a continuous and uninterrupted

flow of interstate trade and commerce. In addition,

substantial quantities of equipment and supplies necessary to

the manufacture and sale of electric-powered steering

assemblies sold by the Defendant and its co-conspirators, as

well as substantial payments for electric-powered steering

assemblies sold by the Defendant and its co-conspirators,

traveled in interstate and foreign trade and commerce.  The

business activities of the Defendant and its co-conspirators

in connection with the manufacture and sale of

electric-powered steering assemblies that were the subject of

the charged conspiracy or within the flow of, and

substantially affected, interstate and foreign trade and

commerce.

     The combination and conspiracy charged in this Count was

carried out within the United States, at least in part, within

the five years preceding the filing of this Information.

     All in violation of Title 15, United States Code Section

1.

          THE COURT:  Thank you.

     Sir, do you have any questions about this Information?

          MR. KAIJIMA:  No, I don't have any questions.

          THE COURT:  The Court will accept the Information as

the charging document in this case and order it filed.

     Now that the Information is officially filed, how do you

plea:  Guilty, not guilty, or *nolo contendere*?

          MR. KAIJIMA:  Plead guilty.

          THE COURT:  Thank you.  Before I can accept your

guilty plea, I must determine that it is made voluntarily with an understanding of the nature of the charge and the consequences of the plea of guilty.

By offering to plead guilty, you do give up certain of your constitutional rights.  This must be an intentional giving up of rights and privileges that you now have.

Please understand that I need not accept your plea unless satisfied of your guilt and that you fully understand your rights.

In order to make this determination, I must now ask you several questions.  Before I do, it's necessary that you obligate yourself to tell the truth.  Once having been sworn, your answers to my questions will be subject to the penalties of perjury, of making a false statement, or possibly contempt of court if you do not answer truthfully.

Are you willing to accept the obligation to tell the truth?

MR. KAIJIMA:  Yes, I am willing to accept the obligation.  I fully understand what you are saying.

THE COURT:  Thank you.

Would you swear the witness.

COURTROOM DEPUTY:  Would you stand and raise your right hand, please?

(The defendant representative, Hiroyuki Kaijima, was duly sworn by the courtroom deputy.)

1          MR. KAIJIMA:  Yes, I do, I swear.

2          COURT DEPUTY:  Thank you.  You may be seated.

3          THE COURT:  Sir, if you're more comfortable being

4    seated, you may talk to me from your chair.  If you wish to

5    stand and are more comfortable, you may stand and talk to me,

6    or you may even approach the lectern and talk to me, if you

7    choose.  Any farther than that, nuh-uh.

8      (Laughter.)

9          MR. KAIJIMA:  Thank you very much.

10          THE COURT:  Sir, now that you've been sworn, you have

11    in the file an authorization from the corporation to speak for

12    them here today?

13          MR. KAIJIMA:  Yes.

14          THE COURT:  It was signed September the 13th, as I

15    recall.  Do you still have full authority to speak for the

16    corporation today?

17          MR. KAIJIMA:  Yes, I do.

18          MR. BUFFIER:  Your Honor, for the record, I believe

19    it was the --

20          THE COURT:  September the 19th?

21          MR. BUFFIER:  -- September the 19th.

22          THE COURT:  All right.  Well, then 13 is a good day.

23    But it was, and I amend the record as September the 19th.  I

24    knew that as well as anybody.

25      How old are you, sir?

1    MR. KAIJIMA:  I am 57 years old.

2    THE COURT:  How much education have you had?

3    MR. KAIJIMA:  I graduated University of Nagoya,

4  School of Economics.  I have bachelor degree.

5    THE COURT:  We are speaking in the English language?

6    MS. KAFELE:  University of Nagoya.

7    COURT REPORTER:  Thank you.

8    THE COURT:  We're speaking in the English language?

9    MR. KAIJIMA:  Yes.

10   THE COURT:  And are you able to understand me?

11   MR. KAIJIMA:  Yes.

12   THE COURT:  Well, I can understand you.  I may ask

13 you to repeat, but I do understand you.  You speak very good

14 English.

15   MR. KAIJIMA:  Thank you very much.

16   THE COURT:  Have you taken any narcotic drugs,

17 medicine or pills or drunk any alcoholic beverages in the past

18 24 hours?

19   MR. KAIJIMA:  No.  I am not taking any of those

20 medicines, narcotics.

21   THE COURT:  Miss Kay-feel-ee?  Is that how you

22 pronounce your name?

23   MS. KAFELE:  Kah-fay-lay.  (Phonetic.)

24   THE COURT:  Do you have any doubt as to the

25 competency of your client to plead on behalf of the

corporation at this time?

     MS. KAFELE:  I do not, Your Honor.

     THE COURT:  Do you represent to me that his authority is in full effect at this time?

     MS. KAFELE:  I do, Your Honor.

     THE COURT:  Thank you.

  We read together the Information.  Do you have any questions about this Information at this time?

     MR. KAIJIMA:  No, I don't have any question.

     THE COURT:  Do you understand the nature and meaning of these charges?

     MR. KAIJIMA:  Yes, I do understand.

     THE COURT:  Have you told your lawyers everything that you know about this case?

     MR. KAIJIMA:  Yes.

     THE COURT:  Do you believe your lawyers are fully informed about the facts and circumstances on which these charges are based?

     MR. KAIJIMA:  Yes, I do.

     THE COURT:  Now, before you can be -- the corporation can be found guilty of these charges, the United States must prove to a jury composed of 12 individuals, whom you and I will help select, certain things, or elements, as we call them.  These elements for the crime for the first Count are these:

1    The conspiracy described in Count One existed as early as
2    2000 and continuing until as late as July 2011, and, in Count
3    Two, as early as 2005 and continuing until as late as October
4    2011.

5    The United States must prove that the Defendant knowingly
6    became a member of the conspiracy and that the conspiracy
7    described in Count One and Count Two either substantially
8    affected interstate commerce in goods or services or occurred
9    within the flow of interstate commerce and goods and services.

10    Do you have any questions about these elements?

11        MR. KAIJIMA:  No, I don't.

12        THE COURT:  And do you understand that I have -- that
13    we have agreed that I have venue in this courtroom, in the
14    Southern District of Ohio.

15        MR. KAIJIMA:  Yes, I do.

16        THE COURT:  And, of course, that some of the acts
17    that the co-conspirators did did in the United States of
18    America?

19        MR. KAIJIMA:  Yes.

20        THE COURT:  Do you understand what the possible
21    maximum penalty for this offense, these offenses are?

22        MR. KAIJIMA:  Yes, I understand it.  It is described
23    on the Plea Agreement, paragraph six on page seven, but I
24    could not memorize whole thing.

25        THE COURT:  Well, I'll read it.  How about that?  If

I read it incorrectly, why, thank you for watching out for me back there.

On each Count it would be a hundred-million-dollar fine, which would be, of course, a quick two hundred million, or twice the gross pecuniary gain the corporation -- the conspirators derived from the crime and/or the twice the gross pecuniary loss caused to the victims of crime by the conspirators.

In addition, you understand that:

pursuant to 18 United States Code Section 3561(c)(1), the Court can impose a term of probation of at least one year but not more than five years for each of the charges, each of the charged crimes; and that

pursuant to 8B1.1 of the United States Sentencing Guidelines, the United States Sentencing Guideline or Guidelines, 18 United States Code Section 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

pursuant to 18 United States Code Section 3013(a)(2)(B), the Court is required to order the corporation to pay a 400-dollar special assessment upon conviction for each of the charges.

Additionally, if I decide that you are placed on probation, there are conditions that I must impose during that period of time.

1       Do you understand that, if I would choose to do so, I

2   could impose this maximum sentence?

3           MR. KAIJIMA:  Yes, I do understand.

4           THE COURT:  The sentence that I'll impose, however,

5   is to be sufficient but not greater than necessary to

6   accomplish the purposes of Congress in passing a guideline to

7   us of how sentences should be imposed.

8       The statute is, actually, I think, 18 -- what is it?  I'll

9   tell you in just a minute -- 3553.

10      And I will not go through the individual steps, Miss Kay

11  -- Kay-feel-lee?

12          MS. KAFELE:  Kah-fay-lay, Your Honor.

13          THE COURT:  Miss Kafele, have you explained the

14  elements used to determine the sentence?

15          MS. KAFELE:  Yes, I have.

16          THE COURT:  Now, do you understand that you will be

17  sentenced pursuant to the Sentencing Reform Act; and the

18  Sentencing Guidelines, although they are advisory, are an

19  important part of our consideration?

20          MR. KAIJIMA:  Yes, I do.

21          THE COURT:  And do you realize there may be

22  collateral consequences to any guilty plea in this matter?

23          MR. KAIJIMA:  Yes, I do.

24          THE COURT:  And the consequences are largely put

25  forth in the Plea Agreement, which we'll put in the record

1    later.

2         MR. KAIJIMA:  Yes.

3         THE COURT:  Now, do you understand that after I

4    accept your guilty plea and sentence you, you will not be able

5    to withdraw your guilty plea?

6         MR. KAIJIMA:  Yes, I do understand.

7         THE COURT:  Since you know the maximum penalty the

8    Court could impose, do you still wish to plead guilty?

9         MR. KAIJIMA:  Yes, I do.

10        THE COURT:  And you already have been informed that I

11   may place you on probation?

12        MR. KAIJIMA:  Yes, I do.

13        THE COURT:  I advise you that under the

14   constitutional laws of the United States, the corporation has

15   the right to plead not guilty; it has the right to be tried by

16   a jury and, at such a speedy and public trial, you would have

17   the right to the assistance of lawyers, the right to confront

18   and cross-examine the witnesses against it, and the right not

19   to be compelled to incriminate itself; at such trial, it would

20   be presumed innocent until such time, as ever, as the United

21   States established its guilt by legal evidence beyond a

22   reasonable doubt; at such a trial, you would be entitled to

23   compulsory process, to call witnesses on its behalf.

24        Do you understand that if you -- if it pleads guilty, it

25   gives up all these rights I have mentioned?

1      MR. KAIJIMA:  Yes, I do understand.

2      THE COURT:  Do you understand that if it pleads

3  guilty there will not be a further trial of any kind in the

4  case, so that by pleading guilty it is waiving and giving up

5  the right to a trial?

6      MR. KAIJIMA:  Yes, I do.

7      THE COURT:  Do you understand that if your plea of

8  guilty is accepted, the judge can impose the same penalty as

9  though it pled not guilty, stood trial, and had been convicted

10  by a jury?

11      MR. KAIJIMA:  Yes, I do.

12      THE COURT:  If you plead guilty, do you understand

13  that it will also have to give up its right not to incriminate

14  itself since I'll have to ask it questions about what it did

15  in order to satisfy myself that it is guilty as charged and it

16  will have to acknowledge its guilt?

17      MR. KAIJIMA:  Yes, I do.

18      THE COURT:  Are you willing to gave up its right to a

19  trial and the other rights I have just discussed?

20      MR. KAIJIMA:  Yes, I am.

21      THE COURT:  Proper Plea Agreements are permissible.

22  However, you and the United States must present the Plea

23  Agreement into the record.  They are, of course, proper.

24      I understand that you have entered into, what I will refer

25  to as, a C agreement in this case.  Is that correct?

1    MR. KAIJIMA:  Yes.

2    THE COURT:  Would you please place the Agreement on

3    the record.

4    MS. LOTKO-BAKER:  Yes, Your Honor.  Can I read from

5    the lectern?

6    THE COURT:  Wherever you are most convenient.  And

7    take your time.  If you wish to rest at any time, please do

8    so.

9    MS. LOTKO-BAKER:  Thank you.

10    THE COURT:  I've read it enough times myself.

11    MS. LOTKO-BAKER:  Your Honor, the factual basis for

12    the offense is contained in the Plea Agreement.

13    THE COURT:  I would suggest to read the Plea

14    Agreement as it's written, including the factual basis, if you

15    wish, or the appropriate person may present the facts at a

16    later time.

17    MS. LOTKO-BAKER:  Yes.  Special Agent Freihofer is

18    here.  And, if acceptable, I'll skip the factual basis and

19    have him present that at the appropriate time.

20    THE COURT:  We want him to understand he is

21    essential.

22    MS. LOTKO-BAKER:  Thank you.  He is.

23    SPECIAL AGENT FREIHOFER:  Thank you, Your Honor.

24    MS. LOTKO-BAKER:  Plea Agreement.

25    THE COURT:  Excuse me just a minute.

1    Please listen, follow along, and if you have any

2 questions, don't hesitate to ask any questions about this

3 agreement.

4         MR. KAIJIMA:  Thank you, Your Honor.

5         MS. LOTKO-BAKER:  Plea Agreement.

6    The United States of America and JTEKT Corporation,

7 Defendant, a corporation organized and existing under the laws

8 of Japan, hereby enter into the following Plea Agreement

9 pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

10 Procedure.

11              Rights of the Defendant.

12    The Defendant understands its rights:

13    to be represented by an attorney;

14    to be charged by Indictment;

15    as a corporation organized and existing under the laws of

16 Japan, to decline to accept service of the summons in this

17 case, and to contest the jurisdiction of the United States to

18 prosecute this case against it in the United States District

19 Court for the Southern District of Ohio;

20    to plead not guilty to any criminal charge brought against

21 it;

22    to have a trial by jury, at which it would be presumed not

23 guilty of the charge and the United States would have to prove

24 every essential element of the charged offense beyond a

25 reasonable doubt for it to be found guilty;

to confront and cross-examine witnesses against it and to subpoena witnesses for its defense at trial;

to appeal its conviction if it is found guilty; and

to appeal imposition of a sentence against it.

Agreement to Plead Guilty and Waive Certain Rights.

The Defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b) to (g) above.  The Defendant knowingly and voluntarily waives any objection or defense it may have to the prosecution of the charged offenses in the United States District Court for the Southern District of Ohio based on venue.

The Defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. Section 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 9 of this Plea Agreement, regardless of how the sentence is determined by the Court.

This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. Section 3742(b) and (c).  Nothing in this paragraph, however, shall act as a bar to the Defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

1    The Defendant agrees that there is currently no known

2  evidence of ineffective assistance of counsel or prosecutorial

3  misconduct.  Pursuant to Federal Rule of Criminal Procedure

4  7(b), Defendant will waive indictment and plead guilty to a

5  two-count Information to be filed in the United States

6  District Court for the Southern District of Ohio.

7    Count One of the Information will charge the Defendant

8  with participating in a conspiracy to suppress and eliminate

9  competition in the automotive parts industry by agreeing to

10  allocate markets, rig bids for, and to fix, stabilize and

11  maintain the prices of bearings sold to Toyota Motor Company,

12  certain of its subsidiaries, and other Japanese automobile

13  manufacturers and Japanese automobile component manufacturers

14  ("Japanese automobile and component manufacturers") in the

15  United States and elsewhere, from at least as early as 2000

16  and continuing until as late as July 2011, in violation of the

17  Sherman Antitrust Act, 15 U.S.C. Section 1.

18    Count Two of the Information will charge the Defendant

19  with participating in a conspiracy to suppress and eliminate

20  competition in the automobile parts industry by agreeing to

21  allocate markets, rig bids for, and to fix, stabilize and

22  maintain the prices of electric-powered steering assemblies

23  sold to Nissan Motor Company Limited and certain of its

24  subsidiaries ("Nissan") in the United States and elsewhere,

25  from at least as early as 2005 and continuing until as late as

October 2011, in violation of the Sherman Antitrust Act, 15
U.S.C. Section 1.

    The Defendant will plead guilty to the criminal charges
described in Paragraph 2 above, pursuant to the terms of this
Plea Agreement, and will make a factual admission of guilt to
the Court in accordance with Federal Rule of Criminal
Procedures 11 as set forth in Paragraph 4 below.

    Which, Your Honor, will be put into the record by Agent
Freihofer.

     Continuing on page 6 of the Plea Agreement:

                Elements of the Offense.

    The elements of the charged offense are that:

    the conspiracy described in the Information existed at or
about the time alleged;

    the Defendant knowingly became a member of the conspiracy;

    and the conspiracy described in the Information either
substantially affected interstate commerce in goods or
services or occurred within the flow of interstate commerce in
goods and services.

              Possible Maximum Sentence.

    The Defendant understands that the statutory maximum
penalty which may be imposed against it upon conviction for
each violation of Section One of the Sherman Antitrust Act is
a fine in an amount equal to the greatest of:

    one hundred million dollars, under 15 U.S.C. Section 1;

twice the gross pecuniary gain the conspirators derived
from the crime, under 18 U.S.C. Sections 3571(c) and (d); or

twice the gross pecuniary loss caused to the victims of
the crime by the conspirators, 18 U.S.C. Section 3571(c) and
(d).

In addition, the Defendant understands that:

pursuant to 18 U.S.C. 3561(c)(1), the Court may impose a
term of probation of at least one year, but not more than five
years, for each of the charged crimes;

pursuant to Section 8B1.1 of the United States Sentencing
Guidelines ("U.S.S.G," "Sentencing Guidelines" or
"Guidelines") or 18 U.S.C. 3563(b)(2) or 3663(a)(3), the Court
may order it to pay restitution to the victims of the
offenses; and

pursuant to 18 U.S.C. Section 3013(a)(2)(B), the Court is
required to order the Defendant to pay a 400-dollar special
assessment upon conviction for each of the charged crimes.

Sentencing Guidelines.

The Defendant understands that the Sentencing Guidelines
are advisory, not mandatory, but that the Court must consider,
in determining and imposing sentence, the Guidelines Manual in
effect on the date of sentencing unless that Manual provides
for greater punishment than the Manual in effect on the last
date that the offense of conviction was committed, in which
case the Court must consider the Guidelines Manual in effect

on the last date that the offense of conviction was committed.

The parties agree that there is no *ex post facto* issue under the November 1st, 2012, Guidelines Manual.  The Court must also consider the other factors set forth in 18 U.S.C. Section 3553(a) in determining and imposing sentence.  The Defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard.  The Defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. Section 3553(a).

Sentencing Agreement.

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and subject to the full, truthful and continuing cooperation of the Defendant and its related entities, as defined in Paragraph 13 of this Plea Agreement, the United States and the Defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the Defendant to pay the United States a criminal fine of $103.27 million pursuant to 18 U.S.C. 3571(d), payable in full before the 15th day after the date of judgment, and no order of restitution.

The parties agree that there exists no aggravating or mitigating circumstances of any kind, or to any degree, not

adequately taken into consideration by the U.S. Sentencing
Commission in formulating the Sentencing Guidelines justifying
a departure pursuant to U.S.S.G. Section 5K2.0.  The parties
agree not to seek at the sentencing hearing any sentence
outside of the Guidelines range nor any Guidelines adjustment
for any reason that is not set forth in this Plea Agreement.
The parties further agree that the recommended sentence set
forth in his Plea Agreement is reasonable.

The United States and the Defendant agree and recommend
that the Court, in determining the Guidelines Fine Range for a
corporate Defendant for violation of 15 U.S.C. 1, apply the
Chapter 8, Sentencing of Organization Guidelines, and the
applicable offense guideline, Section 2R 1.1, Antitrust
Offenses, as follows:

Pursuant to Section 3D1.2(d), Count One and Count Two are
grouped and, pursuant to Section 3D 1.3(b), the quantity, in
this case the volume of affected commerce, is aggregated.

Pursuant to Section 8C2.4(b), Section 2R1.1(d)(1), and
Section 3D1.3(b), the base fine is $80.68 million, 20 percent
of $403.4 million, the volume of affected commerce;

The Defendant's Culpability Score is 8 and is determined,
pursuant to Section 8C2.5, as follows:

Base Culpability Score:  five, under 8C2.5(a);

More than 5,000 employees and participation of high
level-personnel:  Plus five, pursuant to 8C2.5(b)(1);

Self reporting:  Minus two, under 8C2.5(g)(2).

Based on a Culpability Score of eight, the minimum and maximum multipliers are 1.60 to 3.20, under 8C2.6.

The Guidelines Fine Range is $129.09 million to $258.18 million, under 8C2.7.

The Defendant understands that the Court will order it to pay a 400-dollar special assessment for each count of conviction, pursuant to 18 U.S.C. 3013(a)(2)(B), in addition to any fine imposed.

Pursuant to 18 U.S.C. Section 3663, restitution is not mandatory for violations of 15 U.S.C. Section 1, and in light of the availability of civil causes of action, 15 U.S.C. Section 15, and the many civil cases that have been filed against the Defendant which potentially provide for the recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offenses charged in the Information.

Both parties will recommend that no term of probation be imposed, but the Defendant understands that the Court's denial of this request will not void this Plea Agreement.

The United States contends that had this case gone to trial, the United States would have presented evidence to prove that the gain derived from or the loss resulting from the charged offense is sufficient to justify a fine of $103.27 million, pursuant to 18 U.S.C. Section 3571(d).

For the purposes of this plea and sentencing only, the Defendant waives its rights to contest this calculation.

The United States and the Defendant agree that the applicable Guidelines Fine Range exceeds the fine contained in the recommended sentence set forth in Paragraph 9 above. Subject to the full, truthful and continuing cooperation of the Defendant and its related entities, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. Section 8C4.1, for downward departure from the Guidelines Fine Range in this case and will request that the Court impose the fine contained in the recommended sentence set out in Paragraph 9 of this Plea Agreement because of the Defendant's and its related entities' substantial assistance in the government's investigation and prosecutions of violations of federal criminal law in the bearings and electric-powered steering assemblies industries.

Subject to the full, truthful and continuing cooperation of the Defendant and its related entities, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner and extent of Defendant's and its related entities' cooperation and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to

the defendant's involvement in the charged offense, and all
other relevant conduct.

The United States and the Defendant understand that the
Court retains complete discretion to accept or reject the
recommended sentence provided for in Paragraph 9 of this Plea
Agreement.

If the Court does not accept the recommended sentence, the
United States and the Defendant agree that this Plea
Agreement, except for Paragraph 12(b) below, shall be rendered
void.

If the Court does not accept the recommended sentence, the
Defendant will be free to withdraw its guilty plea, Federal
Rule of Criminal Procedure 11(c)(5) and (d).  If the Defendant
withdraws its plea of guilty, this Plea Agreement, the guilty
plea, and any statement made in the course of any proceedings
under Federal Rule of Criminal Procedure 11 regarding the
guilty plea or this Plea Agreement or made in the course of
the plea discussions with an attorney for the government shall
not be admissible against the Defendant in any criminal or
civil proceeding, except as otherwise provided in Federal Rule
of Evidence 410.

In addition, Defendant agrees that, if it withdraws its
guilty plea pursuant to this subparagraph of this Plea
Agreement, the statute of limitations period for any offenses
referred to in Paragraph 15 of this Plea Agreement shall be

tolled for the period between the date of the signing of this Plea Agreement and the date the Defendant withdrew its guilty plea or for a period of 60 days after the date of the signing of this Plea Agreement, whichever period is greater.

### Defendant's Cooperation.

The Defendant and its subsidiaries (related entities) will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture and sale of bearings and electric-powered steering assemblies, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding").  Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The Defendant's subsidiaries for the purpose of this Plea Agreement are entities in which the Defendant directly or indirectly had a greater than 50 percent ownership interest as of the date of signature of this Plea Agreement.

The full, truthful and continuing cooperation of the

Defendant and its related entities shall include, but not be limited to:

producing to the United States all documents, information and other materials, wherever located, not protected under the attorney-client privilege or the work product doctrine (and with translations into English when requested), in the possession, custody or control of the Defendant or any of its related entities, that are requested by the United States in connection with any Federal Proceeding;

using its best efforts to secure the full, truthful and continuing cooperation, as defined in Paragraph 14 of this Plea Agreement, of the current and former directors, officers and employees of the Defendant or any of its related entities as may be requested by the United States, but excluding the three individuals listed in Attachment A filed under seal, including making these persons available in the United States or at any other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial and other judicial proceedings in connection with any Federal Proceeding.  Current directors, officers and employees are defined for the purposes of this Plea Agreement as individuals who are directors, officers or employees of the Defendant or any of its related entities as of the date of signature of this Plea Agreement.

The full, truthful and continuing cooperation of each

person described in Paragraph 13(b) above will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

producing in the United States and at other mutually agreed-upon locations all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work product doctrine (and with translations into English when requested), that are requested by the attorneys and agents of the United States in connection with any Federal Proceeding;

making himself or herself available for interviews in the United States and other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. Sections 1001 and 1623), obstruction of justice (18 U.S.C. Section 1503, *et seq*.), or conspiracy to commit such offenses;

otherwise voluntarily providing the United States with any material or information not requested in (a) through (c) of this paragraph and not protected under the attorney-client

privilege or the work product doctrine that he or she may have that is related to any Federal Proceeding;

when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial or other judicial proceedings in the United States fully, truthfully and under oath, subject to the penalties of perjury (18 U.S.C. Section 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. 1623), contempt (18 U.S.C. Sections 401 and 402), and obstruction of justice (18 U.S.C. Section 1503, *et seq*.);

and agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 16(c), the statute of limitations period for any Relevant Offense, as defined in Paragraph 16(a), shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six months after the date that the United States gave notice of its intent to void its obligations to that person under this Plea Agreement.

Your Honor, could we take a short break before I continue reading?

THE COURT:  Yes.  We'll have a ten-minute recess.

MS. LOTKO-BAKER:  Thank you.

COURTROOM DEPUTY:  All rise.  This Honorable Court is in recess until 11:20.

(A recess was taken from 11:17 a.m. until 11:27 a.m.)

1          THE COURT:   Is the United States ready to proceed?

2          MS. LOTKO-BAKER:   Yes, Your Honor.

3          THE COURT:   Defense ready to proceed?

4          MS. KAFELE:   Yes, Your Honor.

5          THE COURT:   Proceed.

6          MS. LOTKO-BAKER:    Thank you.

7              Government's Agreement.

8      Subject to the full, truthful and continuing cooperation

9  of the Defendant and its related entities, as defined in

10 Paragraph 13 of this Plea Agreement, and upon the Court's

11 acceptance of the guilty plea called for by this Plea

12 Agreement and the imposition of the recommended sentence, the

13 United States agrees that it will not bring further criminal

14 charges against the Defendant or any of its related entities

15 for any act or offense committed before the date of the

16 signature of this Plea Agreement that was undertaken in

17 furtherance of an antitrust conspiracy involving the

18 manufacture and sale of bearings or electric-powered steering

19 assemblies.  The non-prosecution terms of this agreement do

20 not apply to:

21     any civil matter of any kind;

22     any violation of the federal tax or securities laws or

23 conspiracy to commit such offenses;

24     any crime of violence; or

25     any acts of subornation of perjury (18 U.S.C. Section

1622), making a false statement (18 U.S.C. Section 1001),

obstruction of justice (18 U.S.C. 1503, *et seq.*), contempt

(18 U.S.C. Sections 401 to 402), or conspiracy to commit such

offenses.

    The United States agrees to the following:

    Upon the Court's acceptance of the guilty plea called for

by this Plea Agreement and the imposition of the recommended

sentence and subject to the exceptions noted in Paragraph

16(c), the United States agrees that it will not bring

criminal charges against any current or former director,

officer or employee of the Defendant or its related entities

for any act or offense committed before the date of signature

of this Plea Agreement and while that person was acting as

director, officer or employee of the Defendant or its related

entities that were undertaken in furtherance of an antitrust

conspiracy involving the manufacture and sale of bearings or

electric-powered steering assemblies (Relevant Offenses),

except that the protections granted in this paragraph do not

apply to the three individuals listed in Attachment A filed

under seal;

    Should the United States determine that any current or

former director, officer or employee of the Defendant or its

related entities may have information relevant to any Federal

Proceeding, the United States may request that person's

cooperation under the terms of this Plea Agreement by written

request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the Defendant;

If any person requested to provide cooperation under Paragraph 16(b) fails to comply with his or her obligations under Paragraph 14, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void, and the United States may prosecute such person criminally for any federal crime of which the United States has knowledge, including, but not limited to any Relevant Offenses;

Except as provided in Paragraph 16(e), information provided by a person described in Paragraph 16(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury or subornation of perjury (18 U.S.C. Sections 1621 and 1622), making a false statement or declaration (18 U.S.C. Sections 1001 and 1623), obstruction of justice (18 U.S.C. Section 1503, *et seq*.), contempt (18 U.S.C. Sections 401 and 402), or conspiracy to commit such offenses;

If any person who provides information to the United

States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 14 of this Plea Agreement, the agreement in Paragraph 16(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

The non-prosecution terms of this paragraph do not apply to civil matters of any kind; any violation of federal tax or securities laws or conspiracy to commit such offenses; any crime of violence; or perjury or subornation of perjury (18 U.S.C. Section 1621 and 1622), making a false statement or declaration (18 U.S.C. Sections 1001 and 1623), obstruction of justice (18 U.S.C. Section 1503, *et seq.*), contempt (18 U.S.C. Sections 401 and 402), or conspiracy to commit such offenses;

and documents provided under Paragraphs 13(a) and 14(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the Defendant or any of its related entities.

The United States agrees that when any such person travels to the United States for interviews, grand jury appearances or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States.  This paragraph does not apply to an individual's

commission of perjury or subornation perjury (18 U.S.C.
Sections 1621 and 1622), making a false statement or
declaration (18 U.S.C. Sections 1001 and 1623), obstruction of
justice (18 U.S.C. Section 1503 *et seq.*), contempt (18 U.S.C.
Sections 401 and 402), or conspiracy to commit such offenses.

The Defendant understands that it may be subject to
suspension or debarment action by state or federal agencies
other than the United States Department of Justice, Antitrust
Division, based upon the conviction resulting from this Plea
Agreement, and that this Plea Agreement in no way controls
what action, if any, other agencies may take. However, the
United States agrees that, if requested, it will advise the
appropriate officials of any governmental agency considering
such action of the fact, manner and extent of the cooperation
of the Defendant and its related entities as a matter for the
agency to consider before determining what action, if any, to
take. The Defendant nevertheless affirms that it wants to
plead guilty regardless of the suspension or debarment
consequences of its plea.

Representations by Counsel.

The Defendant has been represented by counsel and is fully
satisfied that its attorneys have provided competent legal
representation. The Defendant has thoroughly reviewed this
Plea Agreement and acknowledges that counsel has advised it of
the nature of the charges, any possible defenses to the

charges, and the nature and range of possible sentences.

### Voluntary Plea.

The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises or representations other than the representations contained in this Plea Agreement and Attachment A. The United States has made no promises or representations to the Defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

### Violation of Plea Agreement.

The Defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the Defendant or any of its related entities have failed to provide full, truthful and continuing cooperation, as defined in Paragraph 13 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the Defendant in writing by personal or overnight delivery, e-mail or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligation under this paragraph), and the Defendant and its related entities shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the

substantive offenses relating to the investigation resulting
in this Plea Agreement.

The Defendant agrees that, in the event the United States
is released from its obligations under this Plea Agreement and
brings criminal charges against the Defendant or its related
entities for any offense referred to in Paragraph 15 of this
Plea Agreement, the statute of limitations period for such
offense shall be tolled for the period of between the date of
the signing of this Plea Agreement and six months after the
date the United States gave notice of its intent to void its
obligations under this Plea Agreement.

The Defendant understands and agrees that in any further
prosecution of it or its related entities resulting from the
release of the United States from its obligations under this
Plea Agreement, because of defendant's or its related
entities' violation of this Plea Agreement, any documents,
statements, information, testimony or evidence provided by it,
of its related entities or current or former directors,
officers or employees of it or its related entities to
attorneys or agents of the United States, federal grand
juries, or courts, and any leads derived therefrom, may be
used against it or its related entities in any such further
prosecution.

In addition, the Defendant unconditionally waives its
right to challenge the use of such evidence in any such

1   further prosecution, notwithstanding the protections of

2   Federal Rule of Evidence 410.

3                    Entirety of the Agreement.

4       This Plea Agreement and Attachment A constitute the entire

5   agreement between the United States and the Defendant

6   concerning the disposition of the criminal charges in this

7   case.  This Plea Agreement cannot be modified except in

8   writing, signed by the United States and the Defendant.

9       The undersigned is authorized to enter this Plea Agreement

10  on behalf of the Defendant as evidenced by the Resolution of

11  the Board of Directors of the Defendant attached to and

12  incorporated by reference in this Plea Agreement.

13      The undersigned attorneys for the United States have been

14  authorized by the Attorney General of the United States to

15  enter this Plea Agreement on behalf of the United States.

16      A facsimile or PDF signature shall be deemed an original

17  signature for the purpose of executing this Plea Agreement.

18  Multiple signature pages are authorized for the purpose of

19  executing this Plea Agreement.

20      And the agreement was signed September 19th, 2013.

21          THE COURT:  Thank you.

22          MS. LOTKO-BAKER:  Thank you.

23          THE COURT:  Sir, do you have any questions about this

24  Plea Agreement?

25          MR. KAIJIMA:  No, I don't have any questions.

1          THE COURT:  Are all the agreements that you made in

2   this Plea Agreement the truth?

3          MR. KAIJIMA:  Yes.

4          THE COURT:  Aside from the Plea Agreement, has anyone

5   made any promise, other than the Plea Agreement, that induced

6   you to plead guilty?

7          MR. KAIJIMA:  No.

8          THE COURT:  Aside from the Plea Agreement, has any

9   officer or agent of the United States, any lawyer, any person

10  promised or even suggested that the corporation will receive a

11  lighter sentence or any other form of leniency if you plead

12  guilty?

13         MR. KAIJIMA:  No.

14         THE COURT:  Have any threats been made which induced

15  you to plead guilty?

16         MR. KAIJIMA:  No.

17         THE COURT:  Do you have any questions at this time?

18         MR. KAIJIMA:  I do not have any question.

19         THE COURT:  Is it fair then for me to believe that

20  this decision of the corporation to plead guilty is its

21  voluntary act and deed?

22         MR. KAIJIMA:  Yes, it is.

23         THE COURT:  Is it fair for me to believe that the

24  corporation is pleading guilty here today with a full

25  understanding of the nature of the charge and the consequences

1  of the plea of guilty?

2        MR. KAIJIMA:  Yes, it is.

3        THE COURT:  Is there an agent to state the facts in

4  this case?

5        MS. LOTKO-BAKER:  Yes, Your Honor.

6        THE COURT:  Proceed.

7        SPECIAL AGENT FREIHOFER:  Hello, Your Honor.

8        THE COURT:  Please listen as the Statement of Facts

9  are made.  After he has concluded his presentation, I'll ask

10  you to make any additions or corrections or explanations you

11  wish to make to the statement.

12     Once you and I agree on what occurred, I'll ask you

13  whether the statement is true.

14        MR. KAIJIMA:  I understand, Your Honor.

15        THE COURT:  Proceed.

16        SPECIAL AGENT FREIHOFER:  Yes, Your Honor.

17                    Statement of Facts.

18     Had this case gone to trial, the United States would have

19  presented evidence sufficient to prove the following facts:

20     As to Count One:

21     For purposes of Count One, the "relevant period" is that

22  period from as early as 2000 and continuing until as late as

23  July 2011.  During the relevant period, the Defendant was a

24  corporation organized and existing under the laws of Japan,

25  with its registered headquarters in Osaka, Japan.

1    For purposes of this Plea Agreement, the Defendant also

2    includes those entities that merged in 2006 to form JTEKT.

3    During the relevant period, the Defendant was engaged in the

4    manufacture and sale of bearings in the United States and

5    elsewhere, and employed 5,000 or more individuals.  Bearings

6    are widely used in industry in numerous applications for many

7    products.  Bearings reduce friction and help things to roll

8    smoothly past one another.  They bear the load.

9    During the relevant period, the Defendant's sales of

10   bearings affecting Toyota in the United States total

11   approximately $395 million.

12   During the relevant period, the Defendant, through its

13   managers and employees, including certain high-level personnel

14   of the Defendant, participated in a conspiracy with other

15   bearings manufacturers, the primary purpose of which was to

16   suppress and eliminate competition in the automotive parts

17   industry by agreeing to allocate markets, rig bids for, and to

18   fix, stabilize and maintain the prices of bearings sold to

19   Japanese automobile and component manufacturers in the United

20   States and elsewhere.  In furtherance of the conspiracy, the

21   Defendant, through its managers and employees, engaged in

22   discussions and attended meetings with co-conspirators

23   employed by other bearings manufacturers.

24   During these discussions and meetings, agreements were

25   reached to allocate the supply of, rig bids for, and fix,

stabilize and maintain the prices of bearings sold to Toyota
and certain other Japanese automobile manufacturers in the
United States and elsewhere.

The conspiratorial conversations and meetings described
above took place in the United States and elsewhere.  During
the relevant period, bearings sold by one or more of its
conspirator firms, and equipment and supplies necessary to the
production and distribution of bearings, as well as payments
for bearings, traveled in interstate and foreign commerce.
The business activities of the Defendant and its
co-conspirators in connection with the manufacture and sale of
bearings that were the subject of this conspiracy were within
the flow of, and substantially affected, interstate and
foreign trade and commerce.

As to Count Two:

For purposes of Count Two, the "relevant period" is that
period from as early as July 2005 and continuing until as late
as October 2011.  During the relevant period, the Defendant
was a corporation organized and existing under the laws of
Japan, with its registered headquarters in Osaka, Japan.  For
purposes of this Plea Agreement, the Defendant also includes
those entities that merged in 2006 to form JTEKT.

During the relevant period, the Defendant was engaged in
the manufacture and sale of electric-powered steering
assemblies in the United States and elsewhere, and employed

1    5,000 or more individuals.  Electric-powered steering

2    assemblies provide electric power to assist the driver to more

3    easily steer the automobile.  Electric-powered steering

4    assemblies link the steering wheel to the tires, and include

5    the column, intermediate shaft and electronic control unit,

6    among other parts, but do not include the steering wheel or

7    tires.  During the relevant period, the defendant's sales of

8    electric-powered steering assemblies affecting Nissan in the

9    United States totalled approximately $8.4 million.

10    During the relevant period, the Defendant, through its

11    managers and employees, including certain high-level personnel

12    of the Defendant, participated in a conspiracy with another

13    manufacturer of electric-powered steering assemblies, the

14    primary purpose of which was to suppress and eliminate the

15    competition in the automotive parts industry by agreeing to

16    allocate markets, rig bids for, and fix, stabilize and

17    maintain the prices of electric-powered steering assemblies

18    sold to Nissan in the United States and elsewhere.

19    In furtherance of the conspiracy, the Defendant, through

20    its managers and employees, engaged in discussions and

21    attended meetings with co-conspirators employed by another

22    manufacturer of electric-powered steering assemblies.  During

23    these discussions and meetings, agreements were reached to

24    allocate the supply of, rig bids, and fix, stabilize and

25    maintain the prices of electric-powered steering assemblies

1    sold to Nissan in the United States and elsewhere.

2        During the relevant period, electric-powered steering

3    assemblies sold by one or more of the conspirator firms, and

4    equipment and supplies necessary to the production and

5    distribution of electric-powered steering assemblies, as well

6    as payments for electric-powered steering assemblies, traveled

7    in interstate and foreign commerce.  The business activities

8    of the Defendant and its co-conspirators in connection with

9    the manufacture and sale of electric-powered steering

10   assemblies that were the subject of this conspiracy were

11   within the flow of, and substantially affected, interstate and

12   foreign trade and commerce.

13       (Special Agent Freihofer and Ms. Lotko-Baker confer

14   privately.)

15           SPECIAL AGENT FREIHOFER:  Your Honor, in one section

16   here, I would like to reread one line.  It would better, more

17   accurately state the date.

18       It's for purposes of Count Two, the relevant period is

19   that period from as early as 2005.

20           THE COURT:  Sir, do you have any objections,

21   explanations or additions or deletions that you wish to make

22   to the statement?

23           MR. KAIJIMA:  No.

24           THE COURT:  Miss Kafele, has your investigation into

25   the facts of this case determined the truth of the statement?

1    MS. KAFELE:  Yes, it has, Your Honor.

2    THE COURT:  Sir, is the statement true?

3    MR. KAIJIMA:  Yes.

4    THE COURT:  Is it fair then for me to believe that

5 you on behalf the corporation pleading guilty here today and

6 that you are, in fact, or the corporation is, in fact, guilty

7 of two counts of conspiracy to restrain trade?

8    MR. KAIJIMA:  Yes, it is.

9    THE COURT:  Is there anything further I should

10 discuss with the defendant before I make my findings in the

11 matter?

12    MS. LOTKO-BAKER:  Your Honor, there is Attachment A

13 filed under seal.  I don't know when you want to --

14    THE COURT:  Right.  I do not see anyone but court

15 officials and parties in the courtroom at this time, so you

16 may proceed to present that at this time.

17    And it is under seal.

18    MS. LOTKO-BAKER:  Yes.

19    THE COURT:  And of course everyone that's party of

20 this proceeding understands that it's under seal.

21    MS. KAFELE:  Yes, Your Honor.

22                    * * *

23    (Proceedings filed separately under seal.)

24                    * * *

25    THE COURT:  And is the signature your signature on

1    the Plea Agreement?

2            MR. KAIJIMA:  Yes, it is my signature.

3            THE COURT:  Also your signature?

4            MR. KAIJIMA:  Yes.

5            THE COURT:  And I would suggest that we add the

6    Resolution to the record as well.

7            MS. LOTKO-BAKER:  Yes, Your Honor.

8            THE COURT:  I think you should read that into the

9    record.

10           MS. LOTKO-BAKER:  Okay.  Yes, Your Honor.  The Plea

11   Agreement did say there was a Resolution from the JTEKT Board

12   of Directors attached to the agreement.  There is such a

13   Resolution, which I'll read now.

14           JTEKT Corporation Board Resolutions.

15     At the meeting of the Board of Directors of JTEKT

16   Corporation ("JTEKT") held on September 19, 2013, the board:

17     RESOLVED, that the execution, delivery, and performance of

18   the Plea Agreement between the United States Department of

19   Justice and JTEKT, in substantially the form attached hereto,

20   is hereby approved;

21     RESOLVED, that Hiroyuki Kaijima, Executive Managing

22   Officer of JTEKT and President of JTEKT North America

23   Corporation ("JNA"), is authorized, empowered and directed to

24   execute and deliver the Plea Agreement and all other documents

25   pertaining to the Plea Agreement in the name of and on behalf

of JTEKT, and take further actions as he deems necessary, proper or advisable to implement the foregoing resolutions; and

RESOLVED, that Hiroyuki Kaijima, Executive Managing Officer of JTEKT and President of JNA, is authorized, empowered and directed to represent JTEKT before any court or governmental agency in order to make statements and confirmations in accordance with the Plea Agreement, including the entering of a guilty plea on behalf of JTEKT.

And there is a certificate:

I, Tetsuo Agata, Representative Director and President of JTEKT Corporation, a company organized and existing under the laws of Japan, do hereby certify that the foregoing resolutions adopted by the Board of Directors of JTEKT Corporation, at a meeting of the Board of Directors held on September 19, 2013, are true, correct and complete, and that said resolutions have not been amended, modified or repealed, and remain in full force and effect, as of the date hereof.

It's signed in Nagoya, Japan, this 19th day of September, 2013, by -- and there is a signature of Tetsuo Agata, Representative Director and President, JTEKT Corporation.

THE COURT:  Thank you.

Mr. Kaijima, is that Resolution still effective today?

MR. KAIJIMA:  Yes, it is still effective today.

1     THE COURT:  Do you have any questions at this time?

2     MR. KAIJIMA:  I don't have any question.

3     THE COURT:  Is there anything further we should put

4  into the record before I make my findings?

5     MS. LOTKO-BAKER:  No, Your Honor.

6     MS. KAFELE:  No, Your Honor.

7     THE COURT:  The trial judge has observed the

8  appearance and responsiveness of the witness on behalf of the

9  defendant in giving his answers to the questions asked.  Based

10  on the observation and answers given, the trial judge is

11  satisfied that the witness, on behalf of the corporation, is

12  in full possession of his faculties; he is not suffering from

13  any apparent physical or mental illness; he is not under the

14  influence of narcotics or alcohol; he understands that Title

15  18 United States Code Section 3553 provides the outline of the

16  sentence in this case which should be sufficient but not

17  greater than necessary to accomplish the purposes of the

18  United States Congress.

19     The witness, on behalf of the corporation, understands the

20  proceedings in which he is engaged; he understands the nature

21  and meaning of the charge and the consequences of his guilty

22  plea as to both charges, and he is aware of all plea

23  negotiations undertaken on behalf of the corporation and the

24  United States.

25     Do you have any questions about any of these findings?

1          MR. KAIJIMA:  No, Your Honor.

2          THE COURT:  The trial judge, therefore, finds that

3    the plea has been made voluntarily with the understanding of

4    the nature of the charges and the consequences of such plea.

5       I will accept the guilty plea on behalf of the corporation

6    and enter a judgment of guilty to violation in Count One of

7    Conspiracy to Restrain Trade, and, in Count Two, Conspiracy to

8    Restrain Trade, both violations of Title 15, United States

9    Code Section 1.

10      Is there any comment at this time?

11      (No response.)

12         THE COURT:  The sentencing date that I have available

13   is April 2nd, 2014, at ten.  April 2nd, 2014, at ten a.m.

14      The matter will be continued for sentencing and for the

15   purpose of the presentence investigation and report.  The

16   matter will be continued, as I've said, for sentencing.

17      Is there anything further from the United States?

18         MS. LOTKO-BAKER:  No, Your Honor.

19         THE COURT:  Is there anything further from the

20   Defendant?

21         MS. KAFELE:  No, Your Honor.

22         THE COURT:  Sir, do you have any questions at this

23   time?

24         MR. KAIJIMA:  No, Your Honor.

25         THE COURT:  I'm sorry to have asked that so many

1    times, but I want to be absolutely sure that there is no issue

2    from your point of view of these proceedings.

3           MR. KAIJIMA:  I completely understand.  Thank you.  I

4    appreciate it.

5           THE COURT:  Thank you, sir.

6       As I said, the matter will be continued until April 2nd,

7    2014, at ten a.m.

8           COURTROOM DEPUTY:  All rise.  This Honorable Court is

9    now in recess.

10          (The proceedings concluded at 11:55 a.m.)

11

12

13

14

15

16

17

18

19

20               C E R T I F I C A T E

21

22          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
23

24
     S/MARYANN T. MAFFIA, RDR
25   Official Court Reporter